379 A.2d 1342

COMMONWEALTH of Pennsylvania

v.

George SANGRICCO, Appellant (two cases).

Supreme Court of Pennsylvania.

Argued Sept. 23, 1976.

Decided Dec. 1, 1977.

180

John H. Pope, Wendell G. Freeland, Pittsburgh, for appellant.

Phillip L. Wein, Dist. Atty., Clarion, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY and MANDERINO, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, George Sangricco, was tried by a judge and jury and was convicted of voluntary manslaughter, a violation of the Uniform Firearms Act and aggravated assault. Appellant was sentenced to a four-to-ten year prison term for the manslaughter conviction with a concurrent one and one-half to three year term for the weapons conviction. Sentence was suspended on the assault conviction. This direct appeal followed.[1]

The facts of the crime are as follows. At approximately 2:00 a. m. of August 2, 1973, the victim, Ronald Girts, died of a bullet wound to his head fired from point blank range. An ambulance was called and upon arrival the ambulance driver saw appellant attempting to give mouth-to-mouth resuscitation to the victim. Girts was pronounced dead on arrival at the Clarion Community Hospital.

1. The weapons conviction was appealed to the Superior Court, which on May 19, 1975, certified the appeal to this court.

The Pennsylvania State Police began an investigation and interviewed both appellant and Sherilyn Girts, estranged wife of the victim. Both appellant and Ms. Girts told officers that they were in Ms. Girts' apartment when the victim arrived. They both told police that the victim had shot himself with appellant's gun. The police, however, found inconsistencies between the pair's story and the physical facts. Upon obtaining a search warrant, police administered a neutron activation analysis test which indicated that appellant had fired the weapon which was involved in the victim's death.[2]

The affidavit presented to the magistrate in support of issuing the search warrant set forth:

"Ronald Eugene Girts was found, the victim of a gun shot wound at about 2:00 A.M. August 2, 1973; that the said Girts was found at the apartment of his estranged wife, Sherilyn Kay Girts; that Girts' wife and boy friend, George W. Sangricco were at the apartment at the time of the shooting when the deceased allegedly shot himself with a gun held in his right hand; that the wife and boy friend gave oral statements that they were the only individuals present at the scene at the time of the shooting and that there was no violence other than the self inflicted wound; that the wife and boy friend noticed nothing unusual about Girts except his temper;

"That the deceased was left handed and wound was inflicted on the right side of the head;

"That the deceased had been struck about the face, loosening his teeth, cutting his lips and puffing his eye;

"That the gun used to inflict the wound was a 32 calibre hand gun which only contained one (1) cartridge;

**2.** Neutron Activation Analysis is a technique which, among other things, can determine if a person has recently fired a gun or handled a recently fired gun by measuring the relative concentrations of barium and antimony present on the hands. The palms and backs of the hands are tested. A positive finding on the back of the hand indicates that the suspect has fired a gun. A positive finding on the palms indicates that the suspect has handled a recently fired gun. See F. Bailey & H. Rothblatt, Investigation and Preparation of Criminal Cases, Chap. 15–A (Supp., 1975).

"That the said boy friend owned and operated a green 1970 Chevrolet Pickup which is identified as having two communication antenna [sic.] on the same;

"That the deceased was not the registered owner of the subject gun; and

"That the boy friend has made inconsistent statements."

Further, the application for the warrant set forth that the police were searching appellant and Ms. Girts for, *inter alia* :

". . . certain chemical derivatives which result from combustion of a bullet in a hand gun, traces of which are believed to be on hands of the aforesaid persons; which chemical derivatives are believed to be located on respective bodies of aforesaid persons. . . ."

■ Appellant claims that the search warrant was issued without probable cause. Because the warrant was issued for both appellant and Ms. Girts, appellant argues that this uncertainty as to who shot the victim should have required the magistrate to refuse to issue the warrant. We do not agree.

In *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949), the court stated:

" 'The substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.' *McCarthy v. De Armit,* 99 Pa. 63, 69, quoted with approval in the *Carroll* opinion. 267 U.S. 132 at 161, 45 S.Ct. 280, 69 L.Ed. 543. And this 'means less than evidence which would justify condemnation' or conviction, as Marshall, C. J., said for the Court more than a century ago in *Locke v. United States,* 11 U.S. 339, 7 Cranch 339, 348, 3 L.Ed. 364. Since Marshall's time, at any rate, it has come to mean more than bare suspicion: Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543.

"These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice." (Footnotes omitted).

This court stated in *Commonwealth v. Thomas,* 448 Pa. 42, 52, 292 A.2d 352, 357 (1972):

"Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted. . . ."

As the affidavit set forth, only appellant, Ms. Girts, and the victim were present at the time of the shooting. The two survivors told police that the victim had shot himself. The police investigation, however, turned up physical facts that indicated that suicide was unlikely. First, while the victim was left handed, appellant and Ms. Girts told police that the victim had fired the gun with his right hand. Second, while the police were told that nothing was unusual with the victim, his face was such to indicate he may have been beaten.[3] Under these circumstances, we believe that

3. The defense, at trial, introduced testimony by Dr. Joshue Perper of the Allegheny County Coroner's Office, that the characteristics exhibited on the victim's face were consistent with the gunshot wound to the head. A Dr. James Kightlinger testified for the Commonwealth that he believed the facial markings indicated a beating. Nonetheless, we believe the police were justified in suspecting foul

the police acted reasonably in suspecting that appellant or Ms. Girts may have been involved. We further believe that the police had knowledge of sufficient facts and circumstances to justify obtaining of the search warrant to conduct a neutron activation analysis test on both appellant and Ms. Girts.[4]

In *Commonwealth v. Jackson,* 461 Pa. 632, 638, 337 A.2d 582, 584 (1975), we stated:

"Before a magistrate may issue a constitutionally valid search warrant he must be furnished with information sufficient to persuade a reasonable man that probable cause to conduct a search does exist. . . ."

We believe the affidavit contained adequate information to allow a magistrate to issue a search warrant allowing police to conduct a neutron activation analysis.

Appellant makes two arguments which he believes indicates that the search warrant was erroneously issued. He first argues that nowhere in the affidavit does it indicate that a crime has been committed. In *Commonwealth ex rel. Ensor . v. Cummings,* 416 Pa. 510, 207 A.2d 230 (1965), we held that an affidavit which fails to allege a pre-existing crime is insufficient to justify issuance of a warrant. We have indicated, however, that affidavits must be read in a commonsense manner. *Commonwealth v. Greco,* 465 Pa. 400, 350 A.2d 826 (1976); *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). The affidavit speaks of "the deceased" as a "victim of a gun shot wound". The affidavit further indicates that the police believed the suicide story was improbable. We believe a commonsense reading indicates that police believed a criminal homicide had been committed.

play when their observations indicated that the victim may have been beaten around the face.

4. The test conducted on appellant was positive on the back of his hands, indicating he had fired the gun. Ms. Girts' test produced negative results. A test was also conducted on the victim's hands but it proved inconclusive as certain chemicals applied for another test could have removed the barium and antimony, those elements which give a positive result.

Appellant next argues that the affidavit was insufficient to justify issuance of a warrant because the affidavit contained no mention of where certain information was obtained. Appellant complains that the affidavit fails to indicate where the police obtained the following information:

(1) Appellant was Ms. Girts' "boyfriend".

(2) The victim was left handed.

(3) The deceased had been struck around the face.

(4) The deceased was not the registered owner of the gun involved.[5]

Again using a commonsense reading, we believe appellant's contention is without merit.

In *Commonwealth v. Greco, supra*, 465 Pa. at 405, 350 A.2d at 828, we stated:

"An affidavit does not have to reflect the personal observations of the affiant. It may be based on hearsay information. *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), *Commonwealth v. Conner*, 452 Pa. 333, 305 A.2d 341 (1973). However, when, as in the present case, the affidavit is based on hearsay information, the magistrate must be presented with (1) some of the underlying circumstances from which the informant concluded that the contraband was where he claimed it was and, (2) reasons why the affiant believed the informant was reliable. *Aguilar v. Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723, 729 (1964); *Commonwealth v. Conner, supra*, 452 Pa. at 337, 305 A.2d at 343."

We believe the rules governing reliability of informants are inapplicable, as no informer was involved in the instant case. It is clear that all of the questioned information was either obtained from the personal observations of the police or during interviews with appellant and Ms. Girts. On the

5. We believe one portion of the affidavit must be stricken, i. e., that portion alleging that appellant had made inconsistent statements. The officer could have inserted these inconsistencies in the affidavit but failed to do so. We believe, nonetheless, that the omission of this item does not change our finding that probable cause existed to justify the magistrate's issuing of the search warrant.

basis of this affidavit, we believe the magistrate acted correctly in issuing the search warrant.

■ Appellant finally alleges that the trial court erred in admitting a certain statement given by appellant to the police. At the time of his arrest, appellant was given the required *Miranda* warnings, and was told he was under arrest for the murder of Ronald Girts. Following the required warnings, appellant admitted to unlawfully carrying a gun from Pittsburgh to the scene of the shooting. Appellant claims that his waiver of *Miranda* rights was ineffectual as to the gun charges, because police never informed him of those charges.

In *Commonwealth v. Richman*, 458 Pa. 167, 175, 320 A.2d 351 (1974), we stated:

".  .  . while there is no need for the police to explain in detail all of the technicalities of the charges at issue, the accused in order to make a valid waiver of the right to counsel should at least know the *general nature of the transaction giving rise to the charges.*" (Emphasis added.)

It must be remembered that appellant was not arrested until forty days after the offense.[6] As the trial court stated in its opinion:

"The defendant knew full well that he might be charged with the murder of Ronald Eugene Girts, particularly after the neutron activation analysis test was performed on his hands and his firearm taken as evidence by the investigating officers. During the 40 days that elapsed between the offense and his arrest, he enjoyed complete freedom which certainly included access to legal counsel for advice, aid and assistance. He was permitted to make two phone calls after being taken into custody and before making any statements. And finally, when arrested and advised that he was being charged with murder, he had to be aware of the fact that his weapon was a vital part of the offense."

6. This delay was occasioned by the length of time necessary to obtain results of the neutron activation analysis test.

We agree with the trial court that the *Richman* mandate was complied with.

Judgments of sentence affirmed.

JONES, former C. J., took no part in the consideration or decision of this case.

NIX, J., took no part in the consideration or decision of this case.