754 A.2d 655

COMMONWEALTH of Pennsylvania, Appellee,

v.

Michael GLASS, Appellant.

Supreme Court of Pennsylvania.

Argued Nov. 17, 1999.

Decided June 20, 2000.

William C. Costopoulos, Costopoulos, Foster & Fields, Lemoyne, for Michael Glass.

R. Scott Cramer, Dist. Atty., Daniel Stern, Asst. Dist. Atty., Dist. Attorney's Office, for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

CASTILLE, Justice.

This Court granted review to determine whether Article I, Section 8, of the Pennsylvania Constitution categorically proscribes the issuance of what is commonly referred to as an "anticipatory search warrant," *i.e.*, " 'a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place.' " *Commonwealth v. Glass*, 718 A.2d 804, 806 (Pa.Super.1998), *citing Commonwealth v. Reviera*, 387 Pa.Su-

per. 196, 563 A.2d 1252, 1254 (1989), *appeal dismissed,* 526 Pa. 41, 584 A.2d 308 (1991), *quoting* 2 Wayne R. LaFave, Search and Seizure § 3.7(c) (3d ed.1996). We hold that such search warrants do not *per se* violate Article I, § 8. Accordingly, we affirm.

The anticipatory search warrant at issue here was based upon an affidavit of probable cause prepared by Trooper Brian J. Merritt of the Pennsylvania State Police Tactical Narcotics Team. The affidavit related that, on May 2, 1996, while executing a search warrant at a residence in Dauphin County, Trooper Merritt found a large quantity of controlled substances, as well as various receipts, paraphernalia, and records chronicling drug trafficking activity. The documentation revealed the location where controlled substances were being distributed, the quantity, and the amount of money related to the distribution. At this residence, Trooper Merritt also encountered a person identified in the affidavit only as "C.I. [confidential informant] # 1," who was later identified at the suppression hearing as Richard David Osborne.[1] Osborne decided to cooperate with the police. As part of his cooperation, Osborne explained that, on April 29, 1996, he had delivered four (4) pounds of marijuana to appellant, Michael Glass, at a price of $1,500 per pound. Appellant still owed Osborne $6,000 for the marijuana.

Five days later, on May 7, 1996, Trooper Merritt was at Osborne's residence when Osborne received a telephone call from appellant, who stated that he was prepared to pay Osborne the $6,000 and wanted Osborne to come to his residence to collect the money. Trooper Merritt and two other troopers searched Osborne and his vehicle. Finding no cash or drugs, the troopers then followed Osborne to appellant's residence and watched him enter the residence. Approximately one hour later, Osborne met the troopers at a predetermined location and Osborne handed the troopers $6,000 in cash that appellant had paid him. Osborne relayed to the troopers that appellant stated that he wished to purchase as much additional marijuana as Osborne could secure,

1. For ease of exposition, we will refer to C.I. # 1 as Osborne.

and that the marijuana should be delivered to appellant's residence on May 9th. Osborne also informed the troopers that he had been supplying appellant with marijuana for approximately four months, always delivering it to appellant at appellant's residence.

Trooper Merritt also related that members of the Pennsylvania State Police Strike Force and members of the Attorney General's Bureau of Narcotics Investigations informed him that they were familiar with appellant and knew that he was involved in drug trafficking. A criminal history check of appellant revealed that appellant had a previous arrest for possession with intent to deliver a controlled substance.

Trooper Merritt further noted in the affidavit that he had secured a large quantity of marijuana through state police sources and had made arrangements with Osborne to deliver the marijuana to appellant on May 9, 1996—the same day on which he was seeking the search warrant. The trooper concluded the affidavit by noting that he was requesting an anticipatory search warrant to be served and executed upon delivery of the marijuana by Osborne to appellant at appellant's residence, and that the request was being made in order to keep appellant from using or distributing the drugs that were to be delivered. A district justice authorized the warrant on May 9, 1996, at 3:15 p.m., with the directive that it be served as soon as practicable but no later than within the next two following days.

At the suppression hearing, Trooper Merritt testified that he and Osborne proceeded with the controlled delivery on May 9, 1996. Trooper Merritt gave Osborne a quantity of marijuana and an alert pager, a device similar to other pagers but which sends out a radio signal when activated, and instructed Osborne to activate the pager as soon as he delivered the marijuana. Osborne entered appellant's residence with the marijuana and, approximately five minutes later, Trooper Merritt's alert pager sounded. After troopers met with Osborne at a pre-determined location, they searched him and his vehicle, and finding no marijuana, proceeded to execute the search warrant at appellant's residence.

By the time the troopers entered the house, appellant was already in the kitchen re-packaging the marijuana. In all, the troopers seized approximately twelve (12) pounds of marijuana, including a small amount of marijuana found on appellant's person; a Harley–Davidson motorcycle; two trucks; $13,840 in cash; approximately 70 firearms; more than two dozen individual knives; and 60 knives in a canvas wrap.

Prior to trial, appellant filed a motion to suppress the evidence seized from his residence based upon a broad claim that anticipatory search warrants violate Article I, § 8, of the Pennsylvania Constitution. The suppression court denied the motion. Following a jury trial, appellant was convicted of possession of a controlled substance and possession with intent to deliver a controlled substance, as well as possession of drug paraphernalia.

On appeal to the Superior Court, appellant raised three issues: (1) that anticipatory search warrants, such as that issued here, *per se* violate Article I, § 8, of the Pennsylvania Constitution; (2) that the warrant was wrongly issued because the affidavit of probable cause was defective; and (3) that the warrant was issued in violation of the Pennsylvania Rules of Criminal Procedure. The Superior Court found that appellant waived the latter two issues, since they were not presented to the suppression court, and rejected on the merits his broad state constitutional challenge to anticipatory search warrants. *Glass*, 718 A.2d 804.

We granted appellant's Petition for Allowance of Appeal, limited to his single, non-waived claim that Article I, § 8, of the Pennsylvania Constitution categorically proscribes the issuance of anticipatory search warrants.[2]

Our review of suppression court rulings is circumscribed. Where the record supports the suppression court's

<hr />

2. Notwithstanding the limited nature of our allocatur grant, appellant attempts to renew his waived claims that the warrant was defective and was issued in violation of the Rules of Criminal Procedure. In addition, he attempts to resurrect the claims by arguing that his trial counsel was ineffective. None of these claims were the subject of our grant of review; accordingly, they will not be considered. *Common-*

factual findings, we may reverse only if the legal conclusions drawn from these facts are in error. *Commonwealth v. Cleckley*, 558 Pa. 517, 520, 738 A.2d 427, 429 (1999). Here, of course, the issue is purely one of law involving the construction of our Constitution. Our task is "to interpret, not to rewrite," that Constitution. *See Wertz v. Chapman Township*, 559 Pa. 630, 644 n. 6, 741 A.2d 1272, 1279 n. 6 (1999).

This Court has yet to squarely address the constitutionality of anticipatory search warrants under either the Fourth Amendment or under Article I, § 8. Nor has the United States Supreme Court addressed the constitutionality of the practice. Nevertheless, we hardly write upon a blank slate, as the question of the propriety of anticipatory search warrants has been addressed by all of the United States Courts of Appeals save for the District of Columbia, many of our sister states, and the lower Pennsylvania courts. The overwhelming majority of courts that have considered the practice have concluded that such warrants pass constitutional muster. This includes *every* federal court of appeals,[3] as well as state courts approving the warrants under the Fourth Amendment and under their state constitutional equivalents of the Fourth Amendment.[4]

*wealth v. Davis*, 543 Pa. 628, 632 n. 6, 674 A.2d 214, 216 n. 6 (1996), *citing* Pa.R.A.P. 1115(a)(3); *Commonwealth v. Rush*, 522 Pa. 379, 562 A.2d 285 (1989).

**3.** *See, e.g., United States v. Loy*, 191 F.3d 360, 364 (3rd Cir.1999) (stating, "we recognize that every circuit court of appeals to have addressed this question has held that anticipatory search warrants are not categorically unconstitutional"). *See also U.S. v. Brack*, 188 F.3d 748 (7th Cir.1999); *United States v. Hugoboom*, 112 F.3d 1081 (10th Cir.1997); *United States v. Ruddell*, 71 F.3d 331 (9th Cir.1995); *United States v. Bieri*, 21 F.3d 811 (8th Cir.1994); *United States v. Ricciardelli*, 998 F.2d 8 (1st Cir.1993); *United States v. Lawson*, 999 F.2d 985 (6th Cir.1993); *United States v. Nixon*, 918 F.2d 895 (11th Cir.1990); *United States v. Wylie*, 919 F.2d 969 (5th Cir.1990); *United States v. Garcia*, 882 F.2d 699 (2d Cir.), *cert. denied*, 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989); *United States v. Dornhofer*, 859 F.2d 1195 (4th Cir.1988), *cert. denied*, 490 U.S. 1005, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989).

**4.** *See Commonwealth v. Coleman*, 743 A.2d 983 (Pa.Super.1999) (Fourth Amendment) (Petition for Allowance of Appeal pending); *Common-*

In addition, this Court approved of what was, at least in part, arguably an anticipatory search warrant in *Commonwealth v. Baker*, 513 Pa. 23, 518 A.2d 802 (1986). In *Baker*, the search warrant affidavit recited, *inter alia*, that, between the 5th and 12th of March, 1981, the defendant had a controlled substance, T.H.C.,[5] in his possession, and had delivered a substance containing T.H.C. to an informant on numerous occasions. The previous deliveries were made to the informant inside the defendant's residence while the informant was under the control of police surveillance officers. The defendant told the informant and others that he was expecting a larger quantity of T.H.C. on or about the 11th or 12th of March. On the basis of this information, a magistrate issued a search warrant on March 12th. In upholding the magistrate's finding of probable cause, we noted that "[p]robable cause exists when the magistrate is presented with evidence which would cause a reasonable man to believe that a crime is being, or is about to be committed." *Id.* at 28, 518 A.2d at 805

*wealth v. DiGiovanni*, 428 Pa.Super. 81, 630 A.2d 42 (1993) (Fourth Amendment); *Commonwealth v. Reviera*, 387 Pa.Super. 196, 563 A.2d 1252, 1254 (1989), *appeal dismissed*, 526 Pa. 41, 584 A.2d 308 (1991) (same); *see also People v. Kaslowski*, 239 Mich.App. 320, 608 N.W.2d 539 (2000) (Fourth Amendment and state constitution); *State v. Gonzalez*, 143 N.H. 693, 738 A.2d 1247 (1999) (Fourth Amendment and state constitution); *People v. Carlson*, 185 Ill.2d 546, 236 Ill.Dec. 786, 708 N.E.2d 372 (1999) (Fourth Amendment and state constitution); *State v. Womack*, 967 P.2d 536 (Utah Ct.App.1998) (Fourth Amendment); *State v. Falbo*, 190 Wis.2d 328, 526 N.W.2d 814 (Ct.App.1994) (Fourth Amendment); *State v. Parent*, 110 Nev. 114, 867 P.2d 1143 (1994) (Fourth Amendment); *Bernie v. State*, 524 So.2d 988 (Fla.1988) (Fourth Amendment and state constitution); *Commonwealth v. Soares*, 384 Mass. 149, 424 N.E.2d 221 (1981) (Fourth Amendment); *State v. Mier*, 147 N.J.Super. 17, 370 A.2d 515 (App.Div.1977) (Fourth Amendment and state constitution); *People v. Glen*, 30 N.Y.2d 252, 331 N.Y.S.2d 656, 282 N.E.2d 614 (1972) (Fourth Amendment and state constitution). The states that have disapproved the warrants have usually done so based on state statutes or rules of procedure, and only occasionally upon state constitutional grounds. *See generally* Annotation, *Validity of Anticipatory Search Warrants—State Cases*, 67 A.L.R.5th 361 (1999) (collecting cases). The argument usually made is similar to that made by appellant here, *i.e.*, that probable cause should be construed to require that the item to be seized be on the premises at the moment the warrant issues.

5. "T.H.C." is the abbreviation for Tetrahydrocannbinol, the active ingredient in hashish and marijuana.

(emphasis supplied). Such a belief was warranted in *Baker* because there was evidence not only that a crime (possession of a controlled substance) was being, or had recently been, committed, but also because there was reliable information "that *another crime was about to be,* or had been, committed, *i.e.,* the delivery of [the controlled substance]." *Id.* at 29, 518 A.2d at 805 (emphasis added).

We note further that legal scholars are in accord with the courts in approving properly drafted anticipatory search warrants. *See generally* LaFave, *supra* & n. 88 (citing sources); *see also* James A. Adams, *Anticipatory Search Warrants: Constitutionality, Requirements, and Scope,* 79 Ky. L.J. 681 (1990–91) (hereinafter Adams, *Anticipatory Search Warrants* ). To Professor LaFave, approval of anticipatory search warrants is the "better view." "As one court put it: 'The probable cause doctrine does not require that the contraband to be seized must presently be located at the premises to be searched, only that there is probable cause to believe . . . that evidence [of crime] can likely be found at the described locus at the time of the search.' " LaFave, *supra* at 364, *citing U.S. v. Ricciardelli,* 998 F.2d 8, 10 (1st Cir.1993). LaFave goes on to note that, "[i]f it is believed desirable that whenever possible the police should obtain advance judicial approval before making a search of private premises"—a belief that has been embraced in much of this Court's separate search and seizure jurisprudence under Article I, § 8 [6]—"then there is good reason to uphold the anticipatory warrant procedure." LaFave, *supra* at 364.

Approving this procedure encourages police to seek warrants, thereby ensuring independent pre-search review by a neutral magistrate, while at the same time providing police with the ability to respond quickly to ongoing criminality.

**6.** *See, e.g., Commonwealth v. Labron,* 547 Pa. 344, 690 A.2d 228 (1997) (departing from Fourth Amendment "automobile exception" to warrant requirement); *Commonwealth v. White,* 543 Pa. 45, 669 A.2d 896 (1995) (same); *Commonwealth v. Mason,* 535 Pa. 560, 637 A.2d 251 (1993) (rejecting Fourth Amendment view of independent source and inevitable discovery doctrines in cases involving warrantless entries of private dwellings).

The flexibility afforded police in turn helps law enforcement "in complying with the edicts that the courts themselves have issued." *Id.* at 365, *quoting Alvidres v. Superior Court,* 12 Cal.App.3d 575, 90 Cal.Rptr. 682, 686 (1970).

Finally, LaFave accurately notes that, although the United States Supreme Court "has not yet had occasion to consider this precise type of anticipatory search warrant," it has in other cases "indicated that it was constitutionally proper to obtain a search warrant for the seizure of oral communications through the use of electronic surveillance." LaFave, *supra* at 365, *citing Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) and *Berger v. New York,* 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). Electronic surveillance, of course, contemplates a circumstance where the warrant would have to be issued "in advance of the time that the subject matter to be seized was present on the premises. A warrant directing the seizure of a conversation could only be directed at words which would not be in existence until vocalized by the participants thereto." LaFave, *supra* at 366, *quoting Alvidres,* 90 Cal.Rptr. at 686. Notably, this Court also has at least suggested that it would be constitutionally proper under Article I, § 8, upon a showing of probable cause, to issue a warrant to seize future oral communications. *See Commonwealth v. Brion,* 539 Pa. 256, 261, 652 A.2d 287, 289 (1994) ("With respect to oral communications occurring within one's home, interception pursuant to 18 Pa.C.S. § 5704(2)(ii) [the Wiretapping and Electronic Surveillance Control Act], can only be deemed constitutional under Article I, § 8, if there has been a prior determination of probable cause by a neutral, judicial authority.").

Of course, in evaluating anticipatory search warrants under Pennsylvania's search and seizure jurisprudence, we are not bound to follow the opinions of scholars and other commentators any more than we are bound by the near-unanimous view of the other courts that have considered the question. Nor are we bound by *Baker* or *Brion,* since the issues in those cases did not concern the specific state constitutional challenge now made by appellant. On the other hand, where the weight

of authority falls so heavily on one side of the equation, a proper respect for the experience and opinion of others who have grappled with the issue counsels that we view somewhat skeptically an argument, such as that proposed by appellant here, that demands the contrary result. In addition, we note that the fact that this Court has "accorded greater protections to the citizens of this state under Article I, § 8 of our constitution under certain circumstances," *Cleckley*, 558 Pa. at 525, 738 A.2d at 431, does not command a reflexive finding in favor of any new right or interpretation asserted. To the contrary, we should apply the prevailing standard "where our own independent state analysis does not suggest a distinct standard." *Id.*, 738 A.2d at 431–32 (collecting cases); *Commonwealth v. Edmunds*, 526 Pa. 374, 397–398, 586 A.2d 887, 894 (1991).[7]

With this background in mind, we turn to appellant's specific challenge. Employing the four-part methodology to aid in evaluating state constitutional claims established in *Edmunds*,[8] appellant claims that anticipatory search warrants run afoul of Article I, § 8, on the asserted ground that this provision requires that probable cause exist when the warrant is issued, and not at some time in the future. In appellant's view, anticipatory search warrants violate that requirement because probable cause in those cases arises only after the future event occurs—*i.e.*, as here, where the controlled delivery of the drugs to appellant's residence occurs. When the

7. In many instances, we have found that the prevailing Fourth Amendment view was sufficient to satisfy Article I, § 8. *See, e.g., Cleckley*, 558 Pa. 517, 738 A.2d 427 (federal voluntariness standard for consensual searches adequate under Article I, § 8); *Commonwealth v. Williams*, 547 Pa. 577, 692 A.2d 1031 (1997) (state constitution provided parolee with no greater protection than federal constitution with regard to search of his bedroom); *see also Commonwealth v. Cass*, 551 Pa. 25, 42, 709 A.2d 350, 358 (1998) (privacy interest of students within school environment is limited and is entitled to no greater protection under Article I, § 8, than under Fourth Amendment).

8. Under *Edmunds*, the court should consider: the text of the Pennsylvania constitutional provision; the history of the provision, including Pennsylvania case law; related case law from other states; and policy considerations unique to Pennsylvania. 526 Pa. at 390, 586 A.2d at 895.

occurrence of a future event is necessary to the finding of probable cause, appellant urges that no warrant may issue, no matter how certain it is that that future event will occur. Put another way, under appellant's reading of Article I, § 8, probable cause to search a place for contraband or other evidence of a crime cannot exist unless there is reason to believe that, at the time the warrant is issued, the evidence is *then* in the place to be searched.[9]

█ Preliminarily, we note that it is difficult to see why the result of a probable cause inquiry such as this should be any *different* under our governmental charter than under the Fourth Amendment. The standard for evaluating whether probable cause exists for the issuance of a search warrant is the same under both the Fourth Amendment and Article I, § 8: the "totality of the circumstances" test set forth in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). This Court specifically adopted that standard as a matter of Pennsylvania constitutional law in *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985). *See also Interest of O.A.*, 552 Pa. 666, 675, 684 n. 9, 717 A.2d 490, 495, 499 n. 9 (1998) (plurality opinion);[10] *Edmunds*, 526 Pa. at 408–09, 586 A.2d at 904. Under *Gates* and *Gray*:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that

9. Notwithstanding that neither this Court nor the United States Supreme Court has yet to specifically rule on anticipatory warrants under the Fourth Amendment, appellant did not attempt to preserve a Fourth Amendment claim, nor does he take issue with the prevailing Fourth Amendment view. Instead, appellant distinguishes the Fourth Amendment cases with the mere notation that they were not decided under the Pennsylvania Constitution. He thus bottoms his argument entirely upon a belief that there is something unique in the Article I, § 8 probable cause requirement that dictates disapproval of anticipatory search warrants.

10. Although *O.A.* was a plurality opinion, the dissenting opinion, which expressed the views of three additional Justices, agreed that the test for probable cause was the same under Article I, § 8, as under the Fourth Amendment.

contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis ... for conclud[ing] that probable cause existed." *Gray*, 509 Pa. at 484, 503 A.2d at 925, *quoting Gates*, 462 U.S. at 238–39, 103 S.Ct. 2317 (citation omitted). *See also Ornelas v. United States*, 517 U.S. 690, 695, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (test is whether reasonably prudent man would be warranted in belief that evidence of crime will be found); *Baker*, 513 Pa. at 26, 518 A.2d at 803–04 (test is whether there is fair probability that evidence of crime will be found).

We begin our state constitutional analysis by noting that there is nothing in the text of Article I, § 8, or in the Fourth Amendment for that matter, to support appellant's argument that the probable cause standard requires a showing that the evidence must be in the place to be searched at the time the warrant issues. The text states only that "no warrant to search any place shall issue ... without probable cause." Pa. Const. Art. I, § 8. The provision does not speak to whether a finding of probable cause can or cannot be based upon the anticipation of a future event.

Nor does "the history of our case law" under Article I, § 8, the second prong under *Edmunds, see Commonwealth v. Cass*, 551 Pa. 25, 42, 709 A.2d 350, 358 (1998), support appellant's claim.[11] The cases decided under Article I, § 8, have

11. In the *Edmunds* line, we have noted that, given the textual similarity between Article I, § 8, and the Fourth Amendment, our finding of a privacy-based, broader state constitutional right was derived from the case law interpreting the history of the Pennsylvania provision and not upon any textual command. *Cass*, 551 Pa. at 42, 709 A.2d at 358 ("it is not the text itself which imbues Pennsylvania jurisprudence with its unique character but, rather, the history of our case law as it has developed in the area of search and seizure"). That case law has arisen since the Fourth Amendment exclusionary rule was made applicable to the states in *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). *See Edmunds*, 526 Pa. at 392–399, 586 A.2d at 896–99 (discussing history of Article I, § 8). The broader application of the exclusionary rule under the state charter is of even more recent vintage. *Id.* ("clear divergence" from philosophical underpinnings of federal exclusionary rule began in 1973). The philosophical divergence traced in

recognized a "strong notion of privacy, which is greater than that of the Fourth Amendment." *Commonwealth v. Waltson,* 555 Pa. 223, 724 A.2d 289, 292 (1998). "In *Edmunds,* this court explained that the twin aims of Article I, Section 8 are 'the safeguarding of privacy and the fundamental requirement that warrants shall only be issued upon probable cause.' " *Id., quoting Edmunds,* 526 Pa. at 398, 586 A.2d at 899. But the fact that our Constitution requires probable cause for issuance of a warrant, and the fact that we have insisted upon a "strong adherence" to that requirement, *Edmunds,* 526 Pa. at 399, 586 A.2d at 899, is a given in this case. As to the specific holding appellant proposes, *i.e.,* that Article I, § 8, commands a conclusion that probable cause cannot exist if the evidence to be sought is not yet on the premises, our cases construing Article I, § 8, provide no such support.

What remains under *Edmunds* is consideration of related case law from other jurisdictions and policy considerations unique to this Commonwealth. As we have already noted, the overwhelming weight of authority from other jurisdictions, including every federal Circuit Court to decide the issue, approves the use of anticipatory warrants. A consideration of the reasons for that approval, as well as a consideration of relevant policy concerns inherent in the probable cause analysis, leaves us with no doubt that there is nothing unconstitutional in the use of anticipatory warrants.

Anticipatory search warrants pose no threat to settled views of probable cause. The very nature of a search warrant is in a sense "anticipatory." Time being a continuum, the analysis cannot be otherwise. Warrants authorize future searches, not searches into the past. There is always a lag between the underlying observation, the representations of the affiant, the issuance of the warrant, and its ultimate execution. Presented with a series of factual averments, the magistrate must deter-

*Edmunds* concerned the purposes of the exclusionary rule originally commanded by *Mapp* : the U.S. Supreme Court has since come to focus on deterrence of police misconduct, while the more recent Article I, § 8, cases from this Court have focused on the potentiality of the rule, once embraced by us, to safeguard privacy and ensure that warrants are issued only upon probable cause. *Id.*

mine, or anticipate, whether there is a fair probability that evidence of a crime "will be found" in a particular place when the warrant is executed. Although probable cause unquestionably must exist at the time the warrant is authorized, *see, e.g., Commonwealth v. Tolbert,* 492 Pa. 576, 579–80, 424 A.2d 1342, 1344 (1981) (citation omitted), the magistrate's assessment of probable cause, as well as the ultimate question as to whether the warrant should issue, is distinctly forward-looking.

This is so with all warrants, "anticipatory" or not. For example, a warrant premised entirely upon past observations of contraband or other evidence of a crime in a place— appellant's probable cause paradigm—may properly issue only if the magistrate can determine that there is a reasonable probability that the future will hold what the past promised. The past observations do not conclusively establish that the contraband will still be at the location by the time the warrant is drafted and approved, much less by the even later time that the warrant is to be executed. Drugs, for example, can quickly be sold, consumed, or destroyed in the time it takes to get a warrant. What the past observations do is provide a basis for an expectation or an anticipation that the contraband will still be at the location in question by the time a warrant is secured and executed. *See United States v. Garcia,* 882 F.2d 699, 702 (2d Cir.1989), *cert. denied,* 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989) ("even a warrant based on a known presence of contraband at the premises rests also on the expectation that the contraband will remain there until the warrant is executed"); *People v. Glen,* 30 N.Y.2d 252, 331 N.Y.S.2d 656, 282 N.E.2d 614, 616 (1972) ("At best, present possession is only probative of the likelihood of future possession."). The strength of that expectation, including even the ultimate question whether it is strong enough for probable cause to exist, will then depend upon the usual factors attending a search warrant review, *i.e.,* the recency, specificity, and reliability of the observations and averments.

This focus upon what there is a fair probability to believe "will be found," as opposed to what merely *was* present in the

past, is unavoidable, for the intrusion on privacy authorized by the warrant will of necessity occur upon future execution. Indeed, that is why there is a proscription against staleness in a probable cause analysis. *See Tolbert,* 492 Pa. at 580, 424 A.2d at 1344 ("as time passes and it becomes possible for the facts and circumstances to change, a redetermination of probable cause is required"); *Commonwealth v. Conner,* 452 Pa. 333, 340–41, 305 A.2d 341, 345–46 (1973) (where no time frame was suggested for observations of criminal conduct, issuance of a warrant would be based upon mere suspicion and not probable cause) (citations omitted). *See also* Adams, *Anticipatory Search Warrants,* 79 Ky. L.J. at 694 ("Staleness goes directly to the anticipatory element common to most warrants—that based on historical information it is probable that the item (or its replacement) will still be on the premises.").

The question then is, in making the assessment whether contraband or evidence of a crime will be found at the particular place that is to be searched, may the magistrate consider, as a valid source for probable cause, information concerning a future event—such as here where the police have arranged a controlled delivery of marijuana in response to appellant's request to buy marijuana from the informant. We see no reason in law, logic, or human experience why not.

■ Probable cause is a "practical, nontechnical conception:" it "is a fluid concept—turning on the assessment of probabilities in particular factual contexts not readily, or even usefully, reduced to a neat set of legal rules." *Gates,* 462 U.S. at 231–232, 103 S.Ct. 2317 (citations omitted). *See also Commonwealth v. Sangricco,* 475 Pa. 179, 182–183, 379 A.2d 1342, 1343–1344 (1977); *Commonwealth v. Norwood,* 456 Pa. 330, 333–334, 319 A.2d 908, 910 (1974). So long as a factual averment is reliable and probative of the likelihood that evidence will be found where and when the warrant is to be executed, there is no reason why it may not be considered. A showing that contraband recently *was* at a location is one way of predicting that it will likely still be there in the future. But it is not the only way, nor is it even the most reliable way. Reasonable persons routinely undertake affairs of conse-

quence based not only upon what *has* happened, but also upon what they reasonably expect *will* happen. Were it otherwise, appellate lawyers and judges, for example, would see no reason to prepare for a scheduled oral argument. . Furthermore, evidence of anticipated future events often is far more reliable in a probable cause analysis than evidence concerning past observations precisely because they avoid the often troublesome question of staleness. *See* LaFave, *supra* at 366 ("it may fairly be said that as a general proposition the facts put forward to justify issuance of an anticipatory warrant are more likely to establish that probable cause will exist at the time of the search than the typical warrant based solely on the known prior location of the items to be seized at the place to be searched"). *See also Glen*, 331 N.Y.S.2d 656, 282 N.E.2d at 617 ("In cases like these the certainty of future possession is greater or is often greater than that based on information of past and presumably present possession.").[12] It would be the height of impracticality to ignore such evidence.

Contrary to appellant's argument, recognizing the constitutional propriety and relevance of reasonably likely future events in the analysis of probable cause does not alter or diminish the requirement that the magistrate determine that probable cause exist at the time the warrant is executed. Appellant's argument in this regard confuses the question of *what* may be considered in assessing probable cause with

12. This point is further explained by Professor LaFave:

"At best, present possession is only probative of the likelihood of future possession. In cases [involving anticipatory warrants] the certainty of future possession is greater or is often greater than that based on information of past and presumably current possession.... [I]n many kinds of organized crime the evidence supplied to obtain warrants does not relate to current crimes but past crimes with circumstances showing the likelihood of continuance of the same activity. In the present cases the evidence that there would be a consummated prospective crime was logically and probatively stronger. The necessary pieces were in motion and all but inevitably the pieces would fall into a set, at a later time, constituting the crime." LaFave, *supra* at 366, *quoting Glen*, 331 N.Y.S.2d 656, 282 N.E.2d at 617. "This means, then, that there is no probable cause defect in an anticipation warrant 'as long as the evidence creates substantial probability that the seizable property will be on the premises when searched.'" *Id., quoting Glen*, 331 N.Y.S.2d 656, 282 N.E.2d at 617.

*when* the probable cause determination must be made. To borrow the Commonwealth's example, we have (more than) probable cause today to believe that the sun will rise tomorrow, even though that distinctly future event, tomorrow, is not yet here. Similarly, a magistrate considering an anticipatory warrant is assessing whether there is *then* probable cause to believe that evidence will be found when the warrant *is to be* executed. Our analysis simply recognizes that, in making the practical determination of *what* amounts to probable cause, the magistrate may consider likely future events, subject to the sorts of specificity and reliability strictures attending all probable cause evaluations.[13]

As in *Cleckley*, we find no policy issues unique to Pennsylvania jurisprudence that would require us to accept appellant's contrary position. Nothing in a prospective or "anticipatory" warrant poses any more threat to the warrant and probable cause requirements of the Pennsylvania Constitution than the "conventional" warrant appellant prefers. To the contrary, the warrant furthers the concern for privacy which those provisions protect. This is not only because the future-oriented information is often more reliable—such as here, where it involves the certain delivery of contraband within the control of the police—but also because anticipatory warrants interpose the review of a neutral magistrate *before* the intrusion will occur—a practice we have consistently encouraged.

Anticipatory warrants have the added virtue of providing law enforcement with the flexibility needed to effectively protect the citizenry so that *all* Pennsylvanians may lead quieter, safer, private lives. Absent the anticipatory warrant tool, police, with probable cause to believe that drugs will be delivered to a location, must wait until after the delivery to take any action. At that point, police are forced to choose

13. *See* Adams, *Anticipatory Search Warrants*, 79 Ky. L.J. at 688 ("Merely because the 'fact' justifying the intrusion has not occurred when the warrant is issued does not affect the magistrate's decision-making process in considering the likelihood that the 'fact' will occur and that probable cause will exist at the time of the warrant's execution. In that context, a probable cause determination is made when the warrant is issued.").

between attempting to obtain a search warrant, or conducting a warrantless entry and search immediately after the delivery in the belief that sufficient exigent circumstances exist to justify that action. The former course risks distribution or destruction of the contraband, while the latter runs the risk of suppression if the courts disagree with the on-the-spot police assessment of probable cause and exigency. Authorizing anticipatory warrants resolves this real-world dilemma in a fashion that far better serves Article I, § 8's concerns with privacy and the warrant requirement.

Our conclusion that anticipatory warrants are not categorically prohibited by Article I, § 8, answers the question before us for review. Whether a particular anticipatory warrant should or should not be approved, of course, will depend upon the sufficiency of the averments in the individual case. As we have noted above, no such challenge is properly before us here. Accordingly, we affirm the order of the Superior Court.

Justices ZAPPALA and NIGRO concur in the result.