J-A21005-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARSHALL GIBSON | : | |
| | : | |
| Appellant | : | No. 1168 EDA 2019 |

Appeal from the Judgment of Sentence Entered March 26, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0010042-2017

BEFORE:  LAZARUS, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY LAZARUS, J.:                    **FILED NOVEMBER 23, 2020**

Marshall Gibson appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, following his convictions, after a nonjury trial, for possession with intent to deliver a controlled substance (PWID),[1] use or possession of drug paraphernalia,[2] and terroristic threats.[3] Specifically, Gibson challenges the trial court's denial of his pre-trial motion to suppress certain evidence.  Because the suppression court relied upon the wrong standard when ruling upon Gibson's motion to suppress, we vacate Gibson's judgment of sentence and remand for further proceedings.

---

[1] 35 P.S. § 780-113(a)(30).

[2] 35 P.S. § 780-113(a)(32).

[3] 18 Pa.C.S.A. § 2706(a)(1).

On September 6, 2017, Officer Vincent Visco and his partner, Officer Mooney,[4] were patrolling the 2900 block of Diamond Street in Philadelphia in an unmarked police vehicle. At approximately 9:05 p.m., Officer Visco observed a white 2006 Monte Carlo with illegally tinted windows on all sides, and decided to initiate a traffic stop.[5] The driver pulled over immediately. Officer Visco tried to look through the rear window of the Monte Carlo using his flashlight and his vehicle's spotlight, but could not see into the passenger compartment due to the high tint on the windows. Officer Visco yelled twice for the Monte Carlo's operator, later determined to be Gibson, to lower the windows so the officers could see into the vehicle, before Gibson complied.

_____

[4] Officer Mooney's first name does not appear in the record, and he did not testify at the suppression hearing.

[5] **See** 75 Pa.C.S.A. §§ 4524(e)(1), 4107(b)(2). **See also Commonwealth v. Muhammad**, 992 A.2d 897, 902-03 (Pa. Super. 2010) (holding officers had reasonable suspicion that violation of Motor Vehicle Code occurred or was occurring when they stopped appellant; therefore, stop of vehicle was proper). However,

> [m]ere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation. In such an instance, "it is [i]ncumbent [] upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, **which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Code**."

**Commonwealth v. Feczko**, 10 A.3d 1285, 1291 (Pa. Super. 2010) (en banc) (emphasis in original; citation omitted). In any event, Gibson conceded the validity of the officers' stop of Gibson's vehicle, his removal from the vehicle, and the frisk of his person. **See** N.T. Suppression Hearing, 5/3/18, at 35.

While obtaining Gibson's license, Officer Visco detected the smell of fresh marijuana.[6] Officer Visco also noticed that Gibson's hands were shaking and he was breathing heavily.

Officer Visco ordered Gibson to turn the car off and hand over his keys. After two or three requests, Gibson complied. Officer Visco ordered Gibson out of the Monte Carlo, and opened the driver's side door, at which point Gibson became "very argumentative." N.T. Suppression Hearing, 5/3/18, at 18. Gibson then "bladed his body away" from Officer Visco, turning back towards the Monte Carlo's center console, and reached into his waistband with both hands. *Id.* Officer Mooney, standing on the passenger side of the vehicle, then alerted Officer Visco that Gibson was reaching into his waistband. Officer Visco grabbed Gibson's arms and tried to pull them back.

At this point, Gibson yelled across the street to a crowd of people at a bar in an attempt to draw onlookers. Gibson further requested that the people across the street record the ongoing police encounter. Approximately twenty people started walking towards Gibson and the officers, at which point Officer Mooney radioed for police backup. *Id.* at 20-21. Additional officers arrived within twenty seconds of Officer Mooney's request, and Gibson subsequently calmed down. Because Officer Visco thought Gibson was reaching for a weapon when Gibson placed his hands in his waistband, *see id.* at 20, Officer Visco patted Gibson down. He recovered one amber-tinted pill bottle, with no

_____

[6] Despite police searching Gibson's person and his entire vehicle, no marijuana was ever recovered.

label and a white lid, containing twenty-three black heat-sealed packets of "an off-white chunky substance," which Officer Visco believed, through his training and experience, was crack cocaine. *Id.* at 22. Officer Visco also recovered $2,061 in United States currency from Gibson's person.

The officers then placed Gibson in a police vehicle. Officer Mooney conducted a search of the Monte Carlo's trunk, where the officer recovered "a clear sandwich bag, which contained four smaller ziplock bags, containing [an additional one-hundred-twenty-one] black-tinted packets of an off-white chunky substance," *id.* at 25, which amounted to a total of 144 packets. *See id.* at 26. Police also recovered "a box of new and unused sandwich bags, a black scale, and black new and unused narcotics packaging" from the trunk of the Monte Carlo. *Id.* The officers then took Gibson into custody and transported him to the 22nd Police District, followed by the 9th District to Central Detectives. While waiting in the hallway at the 9th District, Gibson stated to Officer Visco, "I will be out in thirty months. I will remember you. You are going to wish you killed me and I will get you where it hurts and it will be sweet." *Id.* at 27-28.

Gibson litigated the above-mentioned motion to suppress, which was denied on May 9, 2018. When asked at the suppression hearing what he felt when he patted down Gibson, Officer Visco testified, "I patted him down. Due to my narcotics experience, I believed it to be a pill bottle." *Id.* at 37. Additionally, when asked why the officers did not obtain a warrant to search Gibson's vehicle, Officer Visco stated, "Due to the new laws of the odor of

marijuana, with the smell, we no longer need a search warrant." ***Id.*** at 39. Following a nonjury trial, the court found Gibson guilty of the above offenses and, on December 31, 2018, imposed an aggregate sentence of 2½ to 5 years' incarceration, followed by 10 years of probation. On January 7, 2019, Gibson filed a motion to reconsider his sentence, claiming that the court's aggravated-range sentence was manifestly excessive and was imposed without consideration of mitigating factors. In that motion, Gibson also argued that his sentence was illegal insofar as he did not receive credit for time served, and was ordered to serve probation for a count on which he was previously sentenced to no further penalty. On March 26, 2019, the court granted reconsideration of his sentence and imposed and aggregate sentence of 11½ to 23 months' incarceration, followed by 8 years of probation.[7] Gibson then filed a notice of appeal; both he and the trial court complied with Pa.R.A.P. 1925.

On appeal, Gibson presents the following questions for our review:

(1) Was not [Gibson] searched without probable cause and in violation of the plain[ ]feel exception to the warrant requirement, where during a protective frisk an officer felt, in [Gibson's] pants, a pill bottle, an item whose incriminating nature was not immediately apparent?

(2) Did not police lack probable cause to search the trunk of [Gibson's] car based on the odor of marijuana alone, where the search was tainted by the unconstitutional search of [Gibson's] person?

---

[7] Though short on explanation, we glean from the record the court no longer felt that an aggravated sentence was appropriate. ***See*** N.T. Post-Sentence Hearing, 3/26/19, at 14-15.

Appellant's Brief, at 3.

Gibson first claims that the police's recovery from his person of the amber-tinted pill bottle was unconstitutional because it violated the plain feel doctrine, where its incriminating nature was not immediately apparent. *See* Appellant's Brief, at 10-14. Gibson reasons that, because the pill bottle and its contents were seized in violation of his constitutional rights under the United States and Pennsylvania Constitutions, it should have been excluded as fruit of an unlawful search. *Id. See In the Interest of R.A.*, 744 A.2d 1261, 1267-68 (Pa. 2000) (police recovery of pill bottle pursuant to frisk of defendant's person failed to meet plain feel doctrine requirements because officers "merely felt material which may or may not be used for packaging controlled substances," thus, pursuant to fruit of poisonous tree doctrine, exclusion was warranted).

The suppression court agreed with Gibson insofar as it found the police recovery of the pill-bottle "improper." N.T. Suppression Hearing, 5/9/18, at 8. Nevertheless, the court found that all of the recovered evidence was admissible because it would have been discovered under the inevitable discovery doctrine, as part of a search incident to Gibson's arrest. *Id.* at 8-9. In arriving at its decision, the court stated its conclusions of law for the record:

> Officer[] Visco's frisk of [Gibson] was proper. The following facts in the record support the officer's **reasonable suspicion**: [t]he car was stopped at night, a vehicle with dark-tinted windows in a high-crime area; the officer asked the defendant to lower the windows twice, to shut the car off two or three times before he complied; there was an odor of fresh marijuana; the defendant's

nervous, combative demeanor; the defendant turning his body away from the officer and reaching into his waistband.

Officer Visco's recovery of the pill bottle during the initial frisk was improper[. P]ursuant to the idea of inevitable discovery[, Gibson] still would have been subject to a search incident to arrest[. N]arcotics and paraphernalia were recovered following the plain smell search of the vehicle[,] which was registered to [Gibson]. Based on the findings of facts, and this [c]ourt's conclusion of law, the defense[] motion to suppress is denied.

*Id.* (emphasis added).

We review a trial court's denial of a motion to suppress under the following standard:

An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [] plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa. Super. 2015) (quoting

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010)) (brackets and

ellipsis omitted).

Initially, we note that for a search to be reasonable under the Fourth

Amendment of the United States Constitution and Article 1, Section 8 of the

Pennsylvania Constitution, the police must obtain a warrant, supported by probable cause and issued by an independent judicial officer, prior to conducting the search. *Commonwealth v. Gary*, 91 A.3d 102, 107 (Pa. 2014). There are several exceptions to the warrant requirement, however; two are relevant to this case: (1) *Terry*[8] frisks for officer safety based on an officer's reasonable suspicion that criminal activity is afoot; and (2) the automobile exception to the warrant requirement, which requires a finding of probable cause. *Id.* at 107-08.

> It is well-established that a police officer may conduct a brief investigatory stop of an individual if the officer observes unusual conduct which leads him to reasonably conclude that criminal activity may be afoot. *Terry v. Ohio*, 392 U.S. 1, 30[] (1968). Moreover, if the officer has a reasonable suspicion, based on specific and articulable facts, that the detained individual may be armed and dangerous, the officer may then conduct a frisk of the individual's outer garments **for weapons**. Since the sole justification for a *Terry* search is the protection of the officer or others nearby, such a protective search must be strictly "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." Thus, the purpose of this limited search is not to discover evidence, but to allow the officer to pursue his investigation without fear of violence.

*Commonwealth v. Stevenson*, 744 A.2d 1261, 1264-65 (emphasis added; some internal citations omitted). Nevertheless, under the plain feel doctrine, an officer

> may seize non-threatening contraband detected through the officer's sense of touch during a *Terry* frisk if the officer is lawfully in a position to detect the presence of contraband, **the**

---

[8] *See Terry v. Ohio*, 392 U.S. 1 (1968).

- 8 -

**incriminating nature of the contraband is immediately apparent from its tactile impression** and the officer has a lawful right of access to the object. [**Minnesota v.**] **Dickerson**, 508 U.S. 366[,] 373-75[ (1993).] As **Dickerson** makes clear, the plain feel doctrine is only applicable where the officer conducting the frisk feels an object whose mass or contour makes its criminal character immediately apparent. Immediately apparent means that the officer **readily perceives, without further exploration or searching, that what he is feeling is contraband**. If, after feeling the object, the officer lacks probable cause to believe that the object is contraband without conducting some further search, the immediately apparent requirement has not been met and the plain feel doctrine cannot justify the seizure of the object.

**Id.** at 1265 (emphasis added; some internal citations omitted).

Here, the suppression court correctly found that the plain feel doctrine does not apply to the recovered pill bottle. **See In the Interest of R.A.**, **supra** at 1267-68. Nevertheless, relying on the plain smell doctrine, the court found that the pill bottle would inevitably have been discovered in a search incident to Gibson's arrest. In its Rule 1925(a) opinion, the trial court further explained the suppression court's ruling:

**Terry** does not apply in cases where contraband is found during a search pursuant to arrest. **Commonwealth v. Stainbrook**, 471 A.2d 1223, 1225 (Pa. Super. 1984). The law is clear that a warrantless search is proper if incident to a lawful arrest. An arrest is lawful if the acting officer, at the time of arrest, has probable cause to believe that an offense has been committed based on the facts and circumstances surrounding the incident and that the person arrested is probably the perpetrator. When making an arrest in drug related cases, probable cause can be established through the "plain[]smell" doctrine. **Where an officer is justified in being where he is, his detection of the odor of marijuana is sufficient to establish probable cause.** An officer who can establish probable cause based on such information is therefore permitted to make an arrest. Moreover, Pennsylvania courts recognize the inevitable discovery doctrine[.] The inevitable discovery doctrine provides that where evidence,

"[] ultimately or inevitably would have been discovered by lawful means, then the evidence is admissible."

Trial Court Opinion, 6/24/19, at 6 (emphasis added; some internal citations, brackets, and quotation marks omitted). The trial court then concluded that there was sufficient probable cause to search the trunk of Gibson's Monte Carlo, under the vehicle exception to the warrant requirement, because "[t]he smell of fresh marijuana coming from the inside of a stopped vehicle satisfies the probable cause requirement needed to search the trunk of the car." *Id.* at 7-8 (citing *Commonwealth v. Stoner*, 344 A.2d 633, 635-36 (Pa. Super. 1975)).

In *Commonwealth v. Barr*, _ A.3d _, 2020 PA Super 236 (Pa. Super. 2020), this Court addressed whether the smell of marijuana alone always satisfies the constitutional requirements of probable cause. There, the suppression court agreed with the defendant that it does not, and ruled to exclude seized evidence. In granting the motion to suppress, the trial court reasoned that the odor of marijuana "no longer provides police with probable cause to search a motor vehicle from which the odor emanates because a substantial number of Pennsylvania citizens can now consume marijuana legally." *Barr*, *supra* at *1. We remanded to the suppression court for reconsideration in light of the appropriate standard because the odor of marijuana was afforded no weight at all by the suppression court. *Id.* at *52-*53.

In clarifying how the odor of marijuana should be considered within the probable cause analysis, we stated:

- 10 -

contrary to the Commonwealth's claim, there is no preexisting, *per se* rule that the odor of marijuana is **always** sufficient to establish probable cause to believe a crime is being committed. Rather, the existing rule, properly stated, is that the odor of marijuana **may** alone be sufficient to establish probable cause to search in particular factual contexts. In practical terms, historically, the circumstances wherein the odor of marijuana would not alone be sufficient to establish probable cause were necessarily rare or even nonexistent when marijuana was, in all or virtually all circumstances, illegal to possess.

*Id.* at 20-21 (emphasis in original).

Here, Gibson's arrest[9] was executed without a warrant. With regard to warrantless arrests, our Supreme Court has stated:

[L]aw enforcement authorities must have a warrant to arrest an individual in a public place unless they have **probable cause** to believe that 1) a felony has been committed; and 2) the person to be arrested is the felon. **A warrant is also required to make an arrest for a misdemeanor, unless the misdemeanor is committed in the presence of the police officer.**

*Commonwealth v. Clark*, 735 A.2d 1248, 1251 (Pa. 1999) (emphasis added; citation omitted).

Here, our review of the suppression transcript reveals that the suppression court only analyzed the facts of Gibson's case under a "reasonable suspicion" framework, and neglected an analysis regarding the existence of probable cause. *See* N.T. Suppression Hearing, 5/9/18, at 8 ("The following facts in the record support the officer's **reasonable suspicion** . . .")

---

[9] The Commonwealth correctly notes that it is of no moment that Gibson was not formally arrested at the time of the search. So long as probable cause existed from an objective standpoint, and the arrest was in close proximity to the search, the search incident to arrest doctrine applies. *See Commonwealth v. Ford*, 650 A.2d 433, 439 (Pa. 1994).

- 11 -

(emphasis added); *see also Commonwealth v. Wilson*, 622 A.2d 293, 295 (Pa. Super. 1993) ("Reasonable suspicion is [] less demanding [] than probable cause[,] can be established with information that is different in quantity or content[, and] can arise from information that is less reliable[.]").

Nevertheless, the suppression court's findings of fact and conclusions of law, and the trial court's Rule 1925(a) opinion, both rely on a theory of admissibility under the doctrine of "search incident to arrest." *Id.* at 9; Trial Court Opinion, 6/24/19, at 8. Because a warrantless arrest must be supported by probable cause, *see Clark*, *supra*, and because the trial court has only analyzed Gibson's case under a reasonable suspicion standard, we are constrained to remand "for reconsideration by the trial court under the appropriate standard." *Barr*, *supra* at *52.[10] *See also Wilson*, *supra.*

---

[10] That *Barr* was decided two years after the instant search is of no moment. Probable cause "is a fluid concept—turning on the assessment of probabilities in **particular factual contexts**[.] So long as a factual averment is reliable and probative of the likelihood that evidence will be found where and when the warrant is to be executed, there is no reason why it may not be considered." *Commonwealth v. Glass*, 754 A.2d 655, 663-64 (Pa. 2000) (emphasis added; internal citations and quotation marks omitted). Here, the search of Gibson's person and vehicle occurred September 6, 2017, several months **after** the effective date of the Medical Marijuana Act (MMA), 35 P.S. § 10231.101, *et seq*., May 17, 2016. Therefore, the suppression court was required to consider how the odor of marijuana, **under the totality of the circumstances**, factored into the probable cause analysis, at the time of Gibson's search. *See Barr*, *supra* at *21. *Cf. Commonwealth v. Handley*, 213 A.3d 1030, 1036-37 (where police searched defendant's home several months **before** May 17, 2016, court did not err in refusing to consider enactment of MMA and strong smell emanating from defendant's residence established probable cause).

Even in cases where the suppression court applies the reasonable suspicion standard erroneously, where the record supports the result reached we may affirm the suppression court's ruling on any ground. *Commonwealth v. Cartagena*, 63 A.3d 294, 300-01 (Pa. Super. 2013) (en banc). Nevertheless, where the record is inadequate to conclude whether probable cause existed, the more prudent course is to remand for reconsideration. *See Barr*, *supra* at *50-*52.

Here, we find the record is inadequate insofar as the suppression court failed to provide us with "discrete credibility assessments relevant to the other potential factors affecting probable cause." *Id.* at *50. For instance, we note that the court never addressed the fact that police recovered no marijuana from Gibson's person or his vehicle, despite Officer Visco's claims that he smelled it. This should be addressed in light of Officer Visco's statement at the suppression hearing that, "Due to the new laws of the odor of marijuana, with the smell, we no longer need a search warrant." N.T. Suppression Hearing, 5/3/18, at 39. Further, we note that it is not clear to us that all of the evidence recovered from Gibson's person and vehicle was not fruit of the poisonous tree, and, therefore, subject to exclusion. *See Stevenson*, *supra* at 1268 ("Because the pat-down of Stevenson failed to establish probable cause to believe Stevenson was carrying identifiable contraband, the subsequent search of the trunk of the car driven by Stevenson, which resulted in the discovery of additional cocaine, was likewise

unconstitutional."). Nevertheless, we leave these determinations for the suppression court in the first instance.

For the foregoing reasons, we vacate the judgment of sentence and remand to the suppression court to determine whether there was sufficient probable cause to justify the searches of Gibson's person and his vehicle, or to justify his arrest. If such probable cause exists, the sentences may be re-imposed. If the court determines that probable cause did not exist, the order denying suppression must be vacated and a new trial must be granted.

The judgment of sentence is vacated. Matter remanded for further proceedings consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/23/20