J-S05039-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| ANTHONY DORSEY | |
| Appellee | No. 1180 WDA 2014 |

Appeal from the Order entered July 21, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No: CP-02-CR-0005582-2013

BEFORE: DONOHUE, SHOGAN, and STABILE, JJ.

MEMORANDUM BY STABILE, J.: **FILED MAY 18, 2015**

The Commonwealth appeals from the July 21, 2014 order entered in the Court of Common Pleas of Allegheny County, granting the motion to suppress filed by Appellee, Anthony Dorsey ("Dorsey").[1] The Commonwealth contends the affidavit in support of the warrant to search Dorsey's motel room set forth adequate probable cause to support the search.[2] We disagree and, therefore, affirm.

_____

[1] This Court has jurisdiction over this appeal as an appeal from an interlocutory order as of right pursuant to Pa.R.A.P. 311(d). The Commonwealth has certified in good faith that the suppression order here terminates or substantially handicaps its prosecution of Dorsey.

[2] Although the trial court granted the motion to suppress evidence seized from Appellant's motel room, the court denied Appellant's motion to suppress evidence seized from Appellant's vehicle.

In this timely appeal, the Commonwealth presents one issue for our consideration:

> Whether the court below erred in suppressing evidence seized from Room 323 of the Motel 6, 2834 Banksville Road, Pittsburgh, pursuant to a warrant, based on its conclusion that that warrant did not set forth adequate probable cause to support the search?

Commonwealth Brief, at 5.

Initially we note "[o]ur review of a suppression court's ruling is limited. Where the record supports the suppression court's factual findings, we will reverse only if the court's legal conclusions based upon these facts are in error." *Commonwealth v. Coleman*, 830 A.2d 554, 560 (Pa. 2003) (citations omitted).

> The role of both the reviewing court and the appellate court is confined to determining whether there is substantial evidence in the record supporting the decision to issue the warrant. We must limit our inquiry to the information within the four corners of the affidavit submitted in support of probable cause when determining whether the warrant was issued upon probable cause.

*Commonwealth v. Burgos*, 64 A.3d 641, 656 (Pa. Super. 2013) (citations and internal quotations omitted). "[S]ince no factual question is involved in a four corners analysis of the sufficiency of a warrant affidavit, the issue is one of law as to which our review is plenary." *Coleman*, 830 A.2d at 560.

In its opinion in support of granting suppression, the trial court explained:

> This [c]ourt believes that the affidavit of probable cause filed with the search warrant in this case failed to contain the requisite probable cause to search Room 323 of the Motel 6.

The affidavit of probable cause contained information provided by City of Pittsburgh Police Officer, Justin Simoni. After reciting his qualifications as a police officer, Officer Simoni recounted events that transpired on February 21, 2013 during an investigation into [Dorsey]. The affidavit states that he observed [Dorsey] exit the Motel 6 at approximately 2:00 p.m. and enter a silver Cadillac. He observed [Dorsey] reach down and grab an item from under the driver's seat and place it in the pocket of his hooded sweatshirt. The affidavit further states that Officer Simoni learned that [Dorsey] had been staying in Room 323 at the Motel 6.

The affidavit indicates that Officer Simoni began conducting surveillance on Room 323. He observed [Dorsey] "leave the room numerous times and return only after a few minutes." At approximately 4:32 p.m., [Dorsey] again got into his Cadillac and began driving on Banksville Road. Officer Simoni and his partner conducted a traffic stop of [Dorsey's vehicle [due to an inoperative tail light]. During a search of [Dorsey's] person, the officers located "two large bundles of currency." The exact amount of currency was not indicated in the affidavit of probable cause. Small rubber bands were also recovered. Officer Simoni indicated that these rubber bands were consistent with rubber bands used to package heroin stamp bags. No contraband was recovered and [Dorsey] was permitted to leave the scene.

Detectives returned to the Motel 6 to continue surveillance. At approximately 5:45 p.m., [Dorsey] returned to the hotel. The affidavit again states that [Dorsey] was observed leaving Room 323 for short periods of time only to return after a few minutes. At approximately 8:00 p.m., [Dorsey] was observed leaving Room 323 and then entering Room 418 of the Motel 6. After a few minutes, another person, Jason Porter, was seen entering Room 418. Porter left the room after approximately five minutes. After Porter left, detectives conducted a traffic stop of the vehicle in which [Porter] was travelling and they found Porter to be in possession of stamp bags of heroin. No mention is made of the quantity of heroin found in his possession. After becoming aware of the heroin found on Porter, Officer Simoni then began to walk toward Room 418. [Dorsey] was detained in the hallway. Another detective proceeded to Room 418 and knocked on the door. That detective was greeted by Erin Proctor. The detective asked Proctor if there was anyone else in the room. Proctor replied that there wasn't anyone else in the

room and invited the detective to check the room. While checking the room the detective observed, in plain view, stamp bags, raw heroin, cocaine, scales and packaging materials. Proctor was arrested. Based on this information, the search warrant for Room 323 was sought and obtained.

Trial Court Opinion, 7/31/14, at 3-4 (footnote omitted).

As noted above, if the record supports the suppression court's factual findings, we will reverse its ruling only if the court's legal conclusions based on those facts are in error. Here, we conclude that the court's factual findings are supported by the record. Therefore, we must consider whether the court committed error of law in reaching legal conclusions based on those facts. Absent error, we must affirm.

Again, "[i]n analyzing whether a warrant was supported by probable cause, judicial review is confined to the four corners of the affidavit." **Coleman**, 830 A.2d at 560 (citing **Commonwealth v. Stamps**, 427 A.2d 141, 143 (Pa. 1981) and Pa.R.Crim.P. 203(B) ("The issuing authority, in determining whether probable cause has been established, may not consider any evidence outside of the affidavits.")). "Probable cause, of course, is a practical, non-technical conception requiring a consideration of the totality of the circumstances." **Coleman**, 830 A.2d at 560 (citations omitted).

In **Coleman**, our Supreme Court reiterated:

The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is

- 4 -

simply to ensure that the magistrate had a substantial basis . . . for conclud[ing] that probable cause existed.

*Id.* (citations and quotations omitted).     Based on its review of the affidavit of probable cause, the trial court concluded:

> This [c]ourt believes that [the] information contained in the affidavit of probable cause clearly established that there was a fair probability that contraband or evidence of a crime (possession of controlled substances) would be found in the Room 418 of the Motel 6.  However, the search warrant sought authority to search Room 323 of the Motel 6 and this [c]ourt believes that the affidavit of probable cause fell short of providing the requisite showing to withstand a suppression motion.  All drug activity described in the affidavit of probable cause occurred in Room 418.  Porter was observed entering and leaving that room prior to being stopped and found with heroin.  All drugs and drug paraphernalia [were] found in Room 418.  The affidavit clearly indicates that [Dorsey] was detained in the hallway of the Motel 6 outside of Room 418.  The affidavit, however, is devoid of any allegations that [Dorsey] was found in possession of drugs and/or any evidentiary items when he was detained outside of Room 418.  The affidavit does not describe any drug activity occurring in or near Room 323.  The only allegations that relate in any manner to Room 323 are allegations that [Dorsey] was staying Room 323 and that he was observed exiting and entering that room during the day.

Trial Court Opinion, 7/31/14, at 4-5.

We find no error of law in the trial court's grant of Dorsey's suppression motion.  As the court explained, the affidavit of probable cause supported issuance of a warrant for Room 418 where drugs and drug paraphernalia were found.  However, there is no indication the officers who detained Dorsey outside of Room 418 found him to be in possession of any

drugs or paraphernalia,[3] nor was there any suggestion of any drug activity in Room 323. Further, there is no mention of any history prompting the initiation of an investigation into Dorsey or any known connection to Erin Porter, the only individual remaining in Room 418 after Jason Porter and Dorsey exited the room on the night of February 21, 2013. As the trial court observed, the only allegations involving Room 323 related to the fact Dorsey was staying there and was observed exiting the room on various occasions during that day.

We agree with the trial court that, based on the four corners of the affidavit, there was not probable cause to issue the warrant for the search of Room 323 at the Motel 6. Finding no error of law in the trial court's conclusion, we affirm the order granting Dorsey's motion to suppress.

Order affirmed. Case remanded. Jurisdiction relinquished.

---

[3] We note that testimony at the suppression hearing revealed Dorsey was carrying a blue bag, "like a Wal-Mart plastic bag[,]" when he was detained on the night of February 21, 2013 after exiting Room 418. Notes of Testimony, 4/9/14, at 31. The bag contained "new underwear or socks still in packaging." *Id.*

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/18/2015</u>