J-A04026-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DWIGHT A. LANGLEY | |
| Appellant | No. 124 EDA 2016 |

Appeal from the Judgment of Sentence dated December 16, 2015
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0005743-2014

BEFORE: SHOGAN, J., SOLANO, J., and PLATT, J.[*]

MEMORANDUM BY SOLANO, J.:                    **FILED JUNE 27, 2017**

Appellant Dwight A. Langley appeals the judgment of sentence imposed after he was convicted of possession with intent to deliver a controlled substance.[1]  Appellant claims that the affidavit in support of the warrant failed to establish probable cause to search his house.  We affirm.

The relevant facts follow.  On August 21, 2014, Sergeant Timothy Bernhardt of the Upper Darby Police Department applied for a warrant to search 6818 Clover Lane in Upper Darby, Pennsylvania for controlled substances and related items.  The affidavit of probable cause stated in pertinent part:

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30).

In June of 2014, the Upper Darby Township Police Department received a drug complaint from a citizen in good standing in the community. The complainant stated that drugs were being sold from within 6818 Clover Lane, Upper Darby Pennsylvania, 19082. Specifically, the complainant said people were coming and going in the early morning hours of the day to purchase drugs specifically, marijuana from within 6818 Clover Lane . . . . In June of 2014, [Sergeant Bernhardt] received information from the Drug Enforcement Administration, Philadelphia office, regarding drugs being sold from 6818 Clover Lane . . . . This complainant also stated that drugs were being sold from within 6818 Clover Lane . . . . In both complaints the information was the same, that a black male by the name Dwight Langley, was the male who lived and sold drugs from 6818 Clover Lane . . . . In the Drug Enforcement Administration's tip, it was also stated that the male, Dwight Langley, keeps large amounts of marijuana in the basement of 6818 Clover Lane . . . . [Sergeant Bernhardt], based upon experience and knowledge, knows this type of behavior which is described is highly consistent with places and people that are trafficking in controlled substances. Also, it was stated that Dwight Langley drives a gray Nissan Armada, which he owns.

Through investigation, [Sergeant Bernhardt] discovered that a 50 year old black male (d.o.b. 08/24/1964) by the name of Dwight Langley lived at 6818 Clover Lane, Upper Darby, Pennsylvania, 19082. [Sergeant Bernhardt] and assisting officers conducted surveillance on the property at 6818 Clover Lane on several occasions throughout the month of August 2014. While conducting this surveillance, [Sergeant Bernhardt] observed a large black male exit and enter the property on numerous occasions at different times of the day and night. [Sergeant Bernhardt] conducted a photo search through J-NET[2] of Dwight Langley b/m (d.o.b. 08/24/1964), which did reveal a photograph of a black male named Dwight Langley (d.o.b. 08/24/1964), this being the same male that [Sergeant Bernhardt] and assisting officers observed entering and exiting the property at 6818 Clover Lane . . . . [Sergeant Bernhardt]

---

[2] J-NET is an abbreviation for the Pennsylvania Justice Network, "the Commonwealth's system of providing immediate justice information to law enforcement agencies." *Commonwealth v. Carr*, 887 A.2d 782, 783 (Pa. Super. 2005).

also observed a photo taken of Dwight Langley (d.o.b. 08/24/1964) in connection with an arrest by the Upper Darby Township Police Department in 2005. While conducting surveillance officers did observe on several occasions the black male known as Dwight Langley driving a gray Nissan Armada, bearing Pennsylvania registration . . . . [Sergeant Berhardt] also conducted a criminal history check through J-NET for Dwight Langley. Langley was arrested for the following offenses:

(1) . . . .

(2) In November of 2005 Dwight Langley was arrested by the Upper Darby Township Police Department as an adult using the name Dwight Ainsworth Langley for the following offenses: Possessing of a Controlled Substance By an Unregistered Person Except by Prescription is Unlawful, Manufacture of a Controlled Substance, Receiving Stolen Property, Criminal Attempt Possession of Firearm with Altered Manufacturer's Number, Use of Drug Paraphernalia. As a result of this arrest, Dwight Ainsworth Langley was found not guilty.

[Sergeant Bernhardt] did a check through the Upper Darby Township Database and located several incidents in which Dwight Langley was associated with the address 6818 Clover Lane, Upper Darby Pennsylvania, 19082.

\* \* \*

2) The Upper Darby Police Department received a call through Delaware County Emergency Services Center for an Interrupted Burglary. The Upper Darby Township Uniformed Patrol Division responded and spoke to a Black male, who identified himself as Dwight Langley. Mr. Langley advised the responding officer he was the homeowner. Upon uniform police arrival, Delaware County Emergency Services Center advised two males were seen exiting the house and last seen running down the rear alley. Responding Officer[s] observed a large clear plastic bag of marijuana lying on the ground next to the rear door. The bag of marijuana was returned and placed into evidence. No further police action was taken at that time.

\* \* \*

Within 48 hours of the application of this search warrant, two trash bags were obtained from 6818 Clover Lane, Upper Darby, Pennsylvania, which had been placed in the rear alley for pickup by the Upper Darby Township Sanitation Department. Located in the trash bags, [Sergeant Bernhardt] found the following items: mail addressed to resident of 6818 Clover Lane, two (2) clear plastic type bags, each bag containing residue from a green vegetable matter.

[Sergeant Bernhardt] did conduct a field test using a Narco Test Kit on the residue from a green vegetable matter, which resulted in a positive reaction for the presence of marijuana. The residue was taken from the two clear plastic type bags located in the trash bags.

Aff. of Probable Cause, 8/21/14, at 1-4 (some formatting added).

The search warrant application was granted, and Sergeant Bernhardt and other members of the Upper Darby police department executed the warrant at approximately 12:30 p.m. on August 22, 2014. N.T., 10/27/15, at 36. Inside the house, police found approximately 69 pounds of marijuana (most of which was in the basement); two digital scales; Ziploc bags; $7,100 in cash; notes with names, numbers, and dates; Appellant's passport; and mail addressed to Appellant at 6818 Clover Lane. *Id.* at 42-51, 54-72; N.T., 10/28/15, at 49.

Prior to trial, Appellant moved to suppress all evidence found during the search of his house. The trial court held a suppression hearing on February 4, 2015. At the beginning of the hearing, Appellant's counsel stated, "[w]e are challenging the four corners of the search warrant. We're challenging the probable cause." N.T., 2/4/15, at 10. Appellant's counsel

added that he was also "arguing that in the section of the application that refers to items to be searched and seized that that is an overbroad request and basically an exploratory search warrant." *Id.* at 11. On February 18, 2015, the trial court denied Appellant's motion to suppress.

Appellant was tried by a jury, which found Appellant guilty of possession with intent to deliver a controlled substance. On December 16, 2015, the trial court sentenced Appellant to sixteen to sixty months' incarceration. On January 7, 2016, Appellant filed a timely notice of appeal.

On March 8, 2016, Appellant filed a timely Rule 1925(b) statement that asserted the warrant "failed to present sufficient factual averments of the kind and quantity necessary to establish probable cause to search the property." Pa.R.A.P. 1925(b) Statement, 3/8/16, at 1. The trial court's Rule 1925(a) opinion construed Appellant's issue as only a challenge to the overbreadth of the warrant. Trial Ct. Op. at 9-10. The opinion, however, did not address the other arguments that Appellant raised at the suppression hearing and which he again raises on appeal. Those arguments are presented in connection with the following issue stated in Appellant's brief:

> Did the trial court err in denying Appellant's motion to suppress evidence seized pursuant to the execution of a search warrant in his case when the factual basis for the warrant failed to establish probable cause to search the property in question?

Appellant's Brief at 2.[3]

This Court has explained:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

***Commonwealth v. Freeman***, 150 A.3d 32, 34–35 (Pa. Super. 2016)

(citation omitted).

In analyzing whether a warrant was supported by probable cause, judicial review is confined to the four corners of the

_____

[3] The Commonwealth argues that Appellant's claim is waived because during the suppression hearing, Appellant argued only "that the affidavit was too broad in its scope rendering it constitutionally impermissible." Commonwealth's Brief at 9. We disagree with this characterization of Appellant's argument before the trial court, and note that Appellant stated at the suppression hearing, "We are challenging the four corners of the search warrant. We're challenging the probable cause." N.T., 2/4/15, at 10; ***see id.*** at 27-32 (arguing the tips were not corroborated and did not establish probable cause). In this appeal, Appellant does not pursue the argument that the warrant was overbroad. Appellant's Brief at 15 n.7.

affidavit. Probable cause, of course, is a practical, non-technical conception requiring a consideration of the totality of the circumstances.

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis . . . for concluding that probable cause existed.

Finally, since no factual question is involved in a four corners analysis of the sufficiency of a warrant affidavit, the issue is one of law as to which our review is plenary.

*Commonwealth v. Coleman*, 830 A.2d 554, 560 (Pa. 2003) (citations, quotation marks and brackets omitted).

Before we begin our discussion of Appellant's issue, we note that the trial court's opinion did not address Appellant's precise probable cause argument. Instead, the trial court focused on the issue Appellant has now abandoned, the alleged overbreadth of the warrant. However, the trial court's failure to explain its reasoning with respect to the probable cause issue does not prevent us from making a determination of whether, based on the four corners of the warrant affidavit, the magistrate had a substantial basis for finding probable cause to search Appellant's house. The question before the trial court was a question of law, which we resolve *de novo* regardless of the trial court's specification of its legal theory. **See Commonwealth v. Haughwout**, 837 A.2d 480, 487 n.11 (Pa. Super.

- 7 -

2003) (trial court's failure to address issue in its opinion did not hamper appellate review because, in deciding issues of law, appellate court need not defer to conclusions of trial court). Indeed, where the trial court does not issue a Pa.R.A.P. 1925(a) opinion explaining the reasons for its order, an appellate court may resolve questions of law without remanding for further explanation of the trial court's ruling. **Commonwealth v. Hall**, 867 A.2d 619, 640 (Pa. Super. 2005) ("even if the trial judge failed to provide a 1925(a) opinion we would still be within our rights not to order a remand" (citation and internal quotation marks omitted)), **appeal denied**, 895 A.2d 549 (Pa. 2006). We therefore are free to determine whether, as a matter of law, the magistrate had a substantial basis for concluding that probable cause existed.

**Staleness**

Appellant first argues: "Virtually all of the information offered in support of the warrant in [this] case was stale, and, thus, could not serve to establish probable cause to search his residence." Appellant's Brief at 16 (some capitalization removed). In particular, Appellant notes that the tips were provided more than two months prior to the application for the warrant, his 2005 drug arrest was almost nine years prior to the application, and no date was given for other incidents connecting him to 6818 Clover Lane. **Id.** at 20-21 (citing, among other cases, **Commonwealth v. Novak**, 335 A.2d 773 (Pa. Super. 1975)).

"Settled Pennsylvania law establishes that stale information cannot provide probable cause in support of a warrant." ***Commonwealth v. Hoppert***, 39 A.3d 358, 363 (Pa. Super.) (citation omitted), ***appeal denied***, 57 A.3d 68 (Pa. 2012). This Court has explained:

> Age alone . . . does not determine staleness. The determination of probable cause is not merely an exercise in counting the days or even months between the facts relied on and the issuance of the warrant. Rather, **we must also examine the nature of the crime and the type of evidence.**

***Id.*** (emphasis in original) (citation omitted). "Mere lapse in time between discovery of criminal activity and issuance of a search warrant will not necessarily dissipate probable cause[,] and a showing that criminal activity is likely to have continued up to the time of issuance of a warrant will render otherwise stale information viable." ***Commonwealth v. Karns***, 566 A.2d 615, 617 (Pa. Super. 1989) (citation omitted), ***appeal denied***, 578 A.2d 927 (Pa. 1990).

In ***Karns***, police obtained a search warrant based in part on tips from two informants that Karns was growing a large quantity of marijuana in his house. 566 A.2d at 616-17. Karns argued that the warrant was invalid because the affidavit of probable cause did not state when the tips were given, and thus did not demonstrate the freshness of the information on which it relied. ***Id.*** at 617. This Court rejected that argument, observing that the size of the alleged marijuana-growing operation indicated that it was conducted over a continuous period of time. ***Id.*** In addition, we noted

that one of the informants told police one week before the search warrant was issued that Karns would be harvesting his crop within the next month. *Id.* Considering that "probable cause determinations must be based on commonsense, nontechnical analysis," we held that the magistrate and trial court properly determined that probable cause had been established. *Id.* at 617-18 (quoting **Commonwealth v. Gray**, 503 A.2d 921, 925 (Pa. 1985)).

Here, while the police received the tips approximately two months before they obtained the search warrant for Appellant's house, and Appellant's drug arrest was years earlier, the tips and prior arrest were not the only information on which the police relied in obtaining the warrant. Indeed, the police found marijuana residue in the trash outside of Appellant's house less than 48 hours before they applied for the search warrant. This discovery was consistent with the tips, which specified that Appellant was selling marijuana, and it suggested that the drug activity was continuing. **See Hoppert**, 39 A.3d at 363; **Karns**, 566 A.2d at 617. One of the tips also specified that Appellant kept a large quantity of marijuana in his basement, which indicated a large-scale, ongoing operation. **See Hoppert**, 39 A.3d at 363; **Karns**, 566 A.2d at 617. Because the older information suggesting an ongoing operation was corroborated by the newer, consistent information, we reject Appellant's argument that the information in the warrant was too stale to support a finding of probable cause. **See Coleman**, 830 A.2d at 560; **Karns**, 566 A.2d at 617.

Appellant's reliance on **Novak** is misplaced. In **Novak**, the affidavit of probable cause stated that an informant told police he had bought drugs from Novak more than a dozen times in the last two months. 335 A.2d at 774. Because no specific dates were provided, this Court assumed that the transactions occurred in the most remote part of the two-month time period, seven weeks before police applied for the search warrant. **Id.** at 774-75. We held that because there was no evidence of continued illegal activity, the seven-week-old information in the affidavit was too stale to support a finding of probable cause. **Id.** at 775-76. Here, unlike in **Novak**, there was more recent evidence (marijuana residue in the trash recovered within 48 hours prior to the application for the search warrant) that corroborated the older information and indicated that the drug operation was ongoing.

**Corroboration**

Appellant next argues that, "[e]ven if the tips cited in the Affidavit were not stale, they could not have provided support for the warrant because their contents lacked the indicia of reliability necessary to establish probable cause." Appellant's Brief at 21. Appellant notes that the affidavit does not state that the sources had provided reliable information in the past, and it does not contain declarations against interest. He contends that the additional information in the affidavit had "virtually no corroborative value." **Id.** at 23.

With regard to tips from anonymous sources, we have said:

Ordinary citizens, like ordinary witnesses, generally do not provide extensive recitations of the basis of their everyday observations. Likewise, . . . the veracity of persons supplying anonymous tips is by hypothesis largely unknown, and unknowable. . . . Yet, such tips, particularly when supplemented by independent police investigation, frequently contribute to the solution of otherwise "perfect crimes." While a conscientious assessment of the basis for crediting such tips is required by the Fourth Amendment, a standard that leaves virtually no place for anonymous citizen informants is not.

*Commonwealth v. Singleton*, 603 A.2d 1072, 1074 (Pa. Super. 1992) (quoting *Gray*, 503 A.2d at 925); *see Commonwealth v. Cramutola*, 676 A.2d 1214, 1216 (Pa. Super. 1996) ("The law is clear that information provided to the police by an anonymous source can establish probable cause so long as it is corroborated by police investigation").

An anonymous report that is not itself sufficient to establish probable cause "may be sufficiently corroborated by independent observation of a suspect's conduct, if the latter tends to confirm the information in the report or otherwise to support a conclusion that the suspect is engaged in committing a crime." *Commonwealth v. Corleto*, 477 A.2d 863, 865-66 (Pa. Super. 1984) (emphasis and citation omitted). In a number of cases, "'innocent details' and/or conduct 'consistent with activity of law abiding citizens' were used in whole or in part to confirm an informant's report of criminal activity, thus justifying the issuance for a search warrant." *Id.* at 866. In reviewing a magistrate's determination of probable cause, "it should be remembered that while mere suspicion is inadequate, the affidavit need

only set forth a probability, and not a *prima facie* case, of criminal activity."
*Id.*

In *Corleto*, a first-time informant contacted the police to report that he had seen Corleto sell cocaine at his apartment. 477 A.2d at 864. The police then conducted surveillance and saw numerous people briefly visit Corleto's apartment in a short period of time. *Id.* This Court held that, although the frequent short visits could be consistent with non-criminal activity, they tended to corroborate the informant's report. *Id.* at 866. We concluded that based on the totality of circumstances, the magistrate could reasonably conclude that Corleto was selling drugs from his apartment. *Id.*

Here, police found marijuana residue and mail addressed to the resident of 6818 Clover Lane in the trash placed outside of Appellant's house. As Appellant suggests, it is possible that the marijuana in the trash was for personal use or that the trash came from someone who had mistakenly received mail sent to Appellant's address. However, the affidavit only had to establish a probability, and not a *prima facie* case, of criminal activity. *See Corleto*, 477 A.2d at 866. Based on our review of the affidavit, we conclude that the trial court did not err in holding that the magistrate had a substantial basis for making the practical, commonsense decision that there was a reasonable probability that contraband would be found inside Appellant's house at the time the warrant was issued, and we

affirm the judgment of sentence. *See Coleman*, 830 A.2d at 560; *Freeman*, 150 A.3d at 34-35.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/27/2017